# Cooley

Heidi L. Keefe
+1 650 843 5001
hkeefe@cooley.com

Via ECF

April 21, 2020

Peter R. Marksteiner
Circuit Executive and Clerk of the Court
United States Court of Appeals
    for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

Re: *Facebook, Inc. v. Windy City Innovations, LLC,* Case No. 2018-1400 (lead)
    Submission of Supplemental Authority Pursuant to Fed. R. App. P. 28(j)

Dear Mr. Marksteiner:

I write on behalf of Facebook, Inc. to submit the Supreme Court's decision in *Thryv, Inc. v. Click-to-Call Techs., LP*, No. 18-916 (decided April 20, 2020). *Thryv* supports Facebook's argument that the panel lacked jurisdiction to review the PTO's decisions to institute IPR and order joinder under 35 U.SC. § 315(c). *See* Rehearing Pet'n 9-11.

*Thryv* held that the jurisdictional bar in 35 U.S.C. § 314(d)—providing that the decision "whether to institute an inter partes review" is "final and nonappealable"—precludes review of the PTO's determination that an IPR petition is not time-barred under 35 U.S.C. § 315(b). *Thryv* reasoned that the time limit "is closely related" to the institution decision and is "integral to, indeed a condition on, institution." *Thryv* Op. 2, 7. Abrogating this Court's contrary interpretation in *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) (en banc), *Thryv* confirms that the jurisdictional bar extends beyond Section 314 determinations to the PTO's interpretation and application of "institution-related statute[s]." *Thryv* Op. 10; *id.* at 11 ("[E]very decision to institute is made 'under' §314 but must take account of specifications in other provisions" that are subject to the jurisdictional bar). That interpretation, *Thryv* emphasized, accords with the AIA's "purpose and design" to "weed out bad patent claims efficiently." *Id.* at 8.



Peter R. Marksteiner
April 21, 2020
Page Two

*Thryv* confirms that Section 314(d) bars review of the PTO's Section 315(c) institution and joinder decisions.  The PTO's determination that joinder is proper under Section 315(c) and that an otherwise time-barred follow-on petition may therefore be instituted and joined to an existing IPR is not only "closely related" to the institution decision but is a necessary condition for institution.  And applying the jurisdictional bar to institution/joinder determinations avoids (as occurred here) "unwind[ing] the agency's merits decision," thereby "wasting the resources spent resolving patentability and leaving bad patents enforceable." *Thryv* Op. 8-9.  Windy City's claim that joinder was improper amounts to an argument that the PTO "should have refused 'to institute an inter partes review'" of Facebook's follow-on petitions, *id.* at 6—and *Thryv* makes clear that Section 314(d) precludes review of that claim.

Respectfully submitted,

Heidi L. Keefe

ADDENDUM

(Slip Opinion)          OCTOBER TERM, 2019          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## THRYV, INC., FKA DEX MEDIA, INC. *v.* CLICK-TO-CALL TECHNOLOGIES, LP, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 18–916. Argued December 9, 2019—Decided April 20, 2020

Inter partes review is an administrative process that permits a patent challenger to ask the U. S. Patent and Trademark Office to reconsider the validity of earlier granted patent claims. For inter partes review to proceed, the agency must agree to institute review. See 35 U. S. C. §314. Among other conditions set by statute, if a request comes more than a year after suit against the requesting party for patent infringement, "[a]n inter partes review may not be instituted." §315(b). The agency's "determination . . . whether to institute an inter partes review under this section shall be final and nonappealable." §314(d).

Entities associated with petitioner Thryv, Inc. sought inter partes review of a patent owned by respondent Click-to-Call Technologies, LP. Click-to-Call countered that the petition was untimely under §315(b). The Patent Trial and Appeal Board (Board) disagreed and instituted review. After proceedings on the merits, the Board issued a final written decision reiterating its §315(b) decision and canceling 13 of the patent's claims as obvious or lacking novelty. Click-to-Call appealed the Board's §315(b) determination. Treating the Board's application of §315(b) as judicially reviewable, the Court of Appeals concluded that the petition was untimely, vacated the Board's decision, and remanded with instructions to dismiss.

*Held*: Section 314(d) precludes judicial review of the agency's application of §315(b)'s time prescription. Pp. 6–14.

(a) A party generally cannot contend on appeal that the agency should have refused "to institute an inter partes review." §314(d). That follows from §314(d)'s text and *Cuozzo Speed Technologies, LLC* v. *Lee,* 579 U. S. ___. In *Cuozzo,* this Court explained that §314(d) "preclud[es] review of the Patent Office's institution decisions"—at

least "where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Id.*, at ___. Pp. 6–7.

(b) The question here is whether a challenge based on §315(b) ranks as an appeal of the agency's decision "to institute an inter partes review." §314(d). There is no need to venture beyond *Cuozzo*'s holding that §314(d) bars review at least of matters "closely tied to the application and interpretation of statutes related to" the institution decision, 579 U. S., at ___. A §315(b) challenge easily meets that measurement. Section 315(b), setting forth a circumstance in which "[a]n inter partes review may not be instituted," expressly governs institution and nothing more. Pp. 7–8.

(c) This conclusion is strongly reinforced by the statute's purpose and design. Congress designed inter partes review to weed out bad patent claims efficiently. Allowing §315(b) appeals, however, would unwind agency proceedings determining patentability and leave bad patents enforceable. Pp. 8–10.

(d) In Click-to-Call's view, §314(d)'s bar on judicial review is limited to the agency's threshold determination under §314(a) of the question whether the petitioner has a reasonable likelihood of prevailing. *Cuozzo* is fatal to that interpretation, for the Court in that case held unreviewable the agency's application of a provision other than §314(a). Contrary to Click-to-Call's contention, §314(d)'s text does not limit the review bar to §314(a). Rather than borrowing language from related provisions that would have achieved Click-to-Call's preferred meaning, Congress used broader language in §314(d). Click-to-Call also insists that Congress intended judicial supervision of the agency's application of §315(b), but the statute instead reflects a choice to entrust that issue to the agency. Finally, *SAS Institute Inc.* v. *Iancu*, 584 U. S. ___, offers Click-to-Call no assistance. Unlike the appeal held reviewable in *SAS Institute*, Click-to-Call's appeal challenges not the manner in which the agency's review proceeds once instituted, but whether the agency should have instituted review at all. Pp. 10–13.

(e) Click-to-Call argues in the alternative that its §315(b) objection is authorized as an appeal from the Board's final written decision, which addressed the §315(b) issue. Even labeled that way, Click-to-Call's appeal is still barred by §314(d) because Click-to-Call's contention remains, essentially, that the agency should have refused to institute inter partes review. P. 14.

899 F. 3d 1321, vacated and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, KAGAN, and KAVANAUGH, JJ., joined, and in which

Syllabus

THOMAS and ALITO, JJ., joined except as to Part III–C. GORSUCH, J., filed a dissenting opinion, in which SOTOMAYOR, J., joined as to Parts I, II, III, and IV.

Cite as: 590 U. S. ____ (2020)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–916
_____

## THRYV, INC., fka DEX MEDIA, INC., PETITIONER v. CLICK-TO-CALL TECHNOLOGIES, LP, et al.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 20, 2020]

JUSTICE GINSBURG delivered the opinion of the Court.*

Inter partes review is an administrative process in which a patent challenger may ask the U. S. Patent and Trademark Office (PTO) to reconsider the validity of earlier granted patent claims. This case concerns a statutorily prescribed limitation of the issues a party may raise on appeal from an inter partes review proceeding.

When presented with a request for inter partes review, the agency must decide whether to institute review. 35 U. S. C. §314. Among other conditions set by statute, if the request comes more than a year after suit against the requesting party for patent infringement, "[a]n inter partes review may not be instituted." §315(b). "The determination by the [PTO] Director whether to institute an inter partes review under this section shall be final and nonappealable." §314(d).†

In this case, the agency instituted inter partes review in

_____

*JUSTICE THOMAS and JUSTICE ALITO join all but Part III–C of this opinion.

†Key statutory provisions are reproduced in an appendix to this opinion.

Opinion of the Court

response to a petition from Thryv, Inc., resulting in the cancellation of several patent claims. Patent owner Click-to-Call Technologies, LP, appealed, contending that Thryv's petition was untimely under §315(b).

The question before us: Does §314(d)'s bar on judicial review of the agency's decision to institute inter partes review preclude Click-to-Call's appeal? Our answer is yes. The agency's application of §315(b)'s time limit, we hold, is closely related to its decision whether to institute inter partes review and is therefore rendered nonappealable by §314(d).

## I

The Patent and Trademark Office has several ways "to reexamine—and perhaps cancel—a patent claim that it had previously allowed." *Cuozzo Speed Technologies*, *LLC* v. *Lee*, 579 U. S. ___, ___ (2016) (slip op., at 3). Congress established the procedure at issue here, inter partes review, in the Leahy-Smith America Invents Act (AIA), 125 Stat. 284, enacted in 2011. See 35 U. S. C. §311 *et seq.* Inter partes review allows third parties to challenge patent claims on grounds of invalidity specified by statute. §311(b).

For inter partes review to proceed, the agency must agree to institute review. §314. Any person who is not the patent's owner may file a petition requesting inter partes review. §311(a). The patent owner may oppose institution of inter partes review, asserting the petition's "failure . . . to meet any requirement of this chapter." §313.

The AIA sets out prerequisites for institution. Among them, "[t]he Director may not authorize an inter partes review to be instituted unless the Director determines . . . that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." §314(a). Most pertinent to this case,

Opinion of the Court

"[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." §315(b).

After receiving the petition and any response, the PTO "Director shall determine whether to institute an inter partes review under this chapter." §314(b). The Director has delegated institution authority to the Patent Trial and Appeal Board (Board). 37 CFR §42.4(a) (2019). As just noted, the federal agency's "determination . . . whether to institute an inter partes review under this section" is "final and nonappealable." 35 U. S. C. §314(d).

Upon electing to institute inter partes review, the Board conducts a proceeding to evaluate the challenged claims' validity. See §316. At the conclusion of the proceeding—if review "is instituted and not dismissed"—the Board "issue[s] a final written decision with respect to the patentability of" the challenged claims. §318(a). "A party dissatisfied with the final written decision . . . may appeal the decision" to the Court of Appeals for the Federal Circuit. §319.

## II

Respondent Click-to-Call owns a patent relating to a technology for anonymous telephone calls, U. S. Patent No. 5,818,836 ('836 patent). In 2013, petitioner Thryv sought inter partes review, challenging several of the patent's claims.[1]

In opposition, Click-to-Call urged that §315(b) barred institution of inter partes review because Thryv filed its petition too late. Click-to-Call pointed to an infringement suit

_____

[1] More precisely, the petition was filed by four companies, including YellowPages.com, LLC, and Ingenio, LLC. Through "a series of mergers, sales, and name changes," both became Thryv. Brief for Petitioner 8. For simplicity, we refer to Thryv and its predecessor entities as "Thryv."

Opinion of the Court

filed in 2001, which ended in a voluntary dismissal without prejudice.[2]  In Click-to-Call's view, that 2001 suit started §315(b)'s one-year clock, making the 2013 petition untimely.

The Board disagreed.  Section 315(b) did not bar the institution of inter partes review, the Board concluded, because a complaint dismissed without prejudice does not trigger §315(b)'s one-year limit.  Finding no other barrier to institution, the Board decided to institute review.  After proceedings on the merits, the Board issued a final written decision reiterating its rejection of Click-to-Call's §315(b) argument and canceling 13 of the patent's claims as obvious or lacking novelty.

Click-to-Call appealed, challenging only the Board's determination that §315(b) did not preclude inter partes review.  The Court of Appeals dismissed the appeal for lack of jurisdiction, agreeing with Thryv and the Director (who intervened on appeal) that §314(d)'s bar on appeal of the institution decision precludes judicial review of the agency's application of §315(b).  Citing our intervening decision in *Cuozzo*, see *infra*, at 6–7, we granted certiorari, vacated the judgment, and remanded.  *Click-to-Call Technologies, LP* v. *Oracle Corp.*, 579 U. S. ___ (2016).  On remand, the Court of Appeals again dismissed the appeal on the same ground.

Thereafter, in another case, the en banc Federal Circuit held that "time-bar determinations under §315(b) are appealable" notwithstanding §314(d).  *Wi-Fi One*, *LLC* v. *Broadcom Corp.*, 878 F. 3d 1364, 1367 (2018).  The majority opinion construed §314(d)'s reference to the determination whether to institute inter partes review "under this section"

---

[2]The 2001 suit was brought by Inforocket.Com, Inc.—then the exclusive licensee of the '836 patent—against Keen, Inc.  See *Inforocket.Com, Inc.* v. *Keen, Inc.*, No. 1:01–cv–05130 (SDNY).  While the suit was pending, Keen acquired Inforocket and the District Court dismissed the suit without prejudice.  By the time of the inter partes review petition, Keen had become Ingenio (now Thryv).

Opinion of the Court

as trained on the likelihood-of-success requirement stated in §314(a). *Id.*, at 1372. The §315(b) timeliness determination, the majority concluded, "is not 'closely related' to the institution decision addressed in §314(a)." *Id.*, at 1374 (quoting *Cuozzo*, 579 U. S., at ___ (slip op., at 12)). The majority therefore held that for §315(b) appeals, §314(d) does not displace the usual presumption favoring judicial review of agency action. *Wi-Fi One*, 878 F. 3d, at 1374–1375. In a concurring opinion, Judge O'Malley emphasized a "simpler" basis for the same conclusion. *Id.*, at 1375. In her view, §314(d) shields from review only the agency's assessment of a petition's "substantive adequacy," not questions about the agency's "authority to act." *Id.*, at 1376.

Judge Hughes, joined by Judges Lourie, Bryson, and Dyk, dissented, expressing a position that today's dissent characterizes as "extraordinary." *Post*, at 6. Those judges concluded that §314(d) conveys Congress' "clear and unmistakable" "intent to prohibit judicial review of the Board's [inter partes review] institution decision." *Wi-Fi One*, 878 F. 3d, at 1378. That prohibition applies to §315(b) issues, the Federal Circuit dissenters maintained, because §315(b) "describes when an [inter partes review] may be 'instituted.'" *Id.*, at 1377, 1378–1379 (quoting §315(b)).

In light of its en banc decision in *Wi-Fi One*, the Court of Appeals granted panel rehearing in this case. Treating the Board's application of §315(b) as judicially reviewable, the panel's revised opinion held that the Board erred by instituting review. The petition for inter partes review here was untimely, the Court of Appeals held, because the 2001 infringement complaint, though dismissed without prejudice, started the one-year clock under §315(b).[3] The court therefore vacated the Board's final written decision, which had

_____

[3]A footnote in the panel's opinion noted that the Court of Appeals sit-

Opinion of the Court

invalidated 13 of Click-to-Call's claims for want of the requisite novelty and nonobviousness, and remanded with instructions to dismiss.

We granted certiorari to resolve the reviewability issue, 587 U. S. ___ (2019), and now vacate the Federal Circuit's judgment and remand with instructions to dismiss the appeal for lack of appellate jurisdiction.

## III

### A

To determine whether §314(d) precludes judicial review of the agency's application of §315(b)'s time prescription, we begin by defining §314(d)'s scope. Section 314(d)'s text renders "final and nonappealable" the "determination by the Director whether *to institute an inter partes review* under this section." §314(d) (emphasis added). That language indicates that a party generally cannot contend on appeal that the agency should have refused "to institute an inter partes review."

We held as much in *Cuozzo*. There, a party contended on appeal that the agency should have refused to institute inter partes review because the petition failed §312(a)(3)'s requirement that the grounds for challenging patent claims must be identified "with particularity." 579 U. S., at ___ (slip op., at 6) (internal quotation marks omitted). This "contention that the Patent Office unlawfully initiated its agency review is not appealable," we held, for "that is what §314(d) says." *Id.*, at ___ (slip op., at 7). Section 314(d), we explained, "preclud[es] review of the Patent Office's institution decisions" with sufficient clarity to overcome the

_____

ting en banc had considered and agreed with the panel majority's conclusion that a complaint voluntarily dismissed without prejudice can trigger §315(b)'s time bar. *Click-to-Call Technologies, LP* v. *Ingenio, Inc.*, 899 F. 3d 1321, 1328, n. 3 (CA Fed. 2018). On that issue, Judge Taranto issued a concurring opinion, *id.*, at 1343–1347, and Judge Dyk, joined by Judge Lourie, issued a dissenting opinion, *id.*, at 1350–1355. That question is outside the scope of our review.

Opinion of the Court

"'strong presumption' in favor of judicial review." *Id.*, at
___–___ (slip op., at 9–11) (quoting *Mach Mining, LLC* v.
*EEOC*, 575 U. S. 480, 486 (2015)). See *Cuozzo*, 579 U. S.,
at ___–___ (slip op., at 9–11) (finding "'clear and convincing'
indications . . . that Congress intended to bar review" (quot-
ing *Block* v. *Community Nutrition Institute*, 467 U. S. 340,
349–350 (1984))).

We reserved judgment in *Cuozzo*, however, on whether
§314(d) would bar appeals reaching well beyond the deci-
sion to institute inter partes review. 579 U. S., at ___ (slip
op., at 11). We declined to "decide the precise effect of
§314(d) on," for example, "appeals that implicate constitu-
tional questions." *Ibid.* Instead, we defined the bounds of
our holding this way: "[O]ur interpretation applies where
the grounds for attacking the decision to institute inter
partes review consist of questions that are closely tied to
the application and interpretation of statutes related to the
Patent Office's decision to initiate inter partes review."
*Ibid.*

B

We therefore ask whether a challenge based on §315(b)
ranks as an appeal of the agency's decision "to institute an
inter partes review." §314(d). We need not venture beyond
*Cuozzo*'s holding that §314(d) bars review at least of mat-
ters "closely tied to the application and interpretation of
statutes related to" the institution decision, 579 U. S., at
___ (slip op., at 11), for a §315(b) challenge easily meets that
measurement.

Section 315(b)'s time limitation is integral to, indeed a
condition on, institution. After all, §315(b) sets forth a cir-
cumstance in which "[a]n inter partes review may not be
instituted." Even Click-to-Call and the Court of Appeals
recognize that §315(b) governs institution. See Brief for Re-
spondent Click-to-Call 1 (§315(b) is "a clear limit on the
Board's institution authority"); *Wi-Fi One*, 878 F. 3d, at

Opinion of the Court

1373 ("§315(b) controls the Director's authority to institute [inter partes review]").

Because §315(b) expressly governs institution and nothing more, a contention that a petition fails under §315(b) is a contention that the agency should have refused "to institute an inter partes review." §314(d). A challenge to a petition's timeliness under §315(b) thus raises "an ordinary dispute about the application of" an institution-related statute. *Cuozzo*, 579 U. S., at ___ (slip op., at 7). In this case as in *Cuozzo*, therefore, §314(d) overcomes the presumption favoring judicial review.[4]

## C

The AIA's purpose and design strongly reinforce our conclusion. By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently. See *id.*, at ___ (slip op., at 8); H. R. Rep. No. 112–98, pt. 1, p. 40 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.").[5]

_____

[4] We do not decide whether mandamus would be available in an extraordinary case. Cf. *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. ___, ___–___, n. 5 (2016) (ALITO, J., concurring in part and dissenting in part) (slip op., at 5–6, n. 5).

[5] The dissent acknowledges that "Congress authorized inter partes review to encourage further scrutiny of already issued patents." *Post,* at 14. Yet the dissent, despite the Court's decision upholding the constitutionality of such review in *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC*, 584 U. S. ___ (2018), appears ultimately to urge that Congress lacks authority to permit second looks. Patents are property, the dissent several times repeats, and Congress has no prerogative to allow "property-taking-by-bureaucracy." *Post,* at 1, 18–21. But see *Oil States*, 584 U. S., at ___ (slip op., at 7) ("patents are public franchises" (internal quotation marks omitted)). The second look Congress put in place is assigned to the very same bureaucracy that granted the patent in the first place. Why should that bureaucracy be trusted to give an

Opinion of the Court

Allowing §315(b) appeals would tug against that objective, wasting the resources spent resolving patentability and leaving bad patents enforceable. A successful §315(b) appeal would terminate in vacatur of the agency's decision; in lieu of enabling judicial review of patentability, vacatur would unwind the agency's merits decision. See *Cuozzo*, 579 U. S., at ___ (slip op., at 8). And because a patent owner would need to appeal on §315(b) untimeliness grounds only if she could not prevail on patentability, §315(b) appeals would operate to save bad patent claims. This case illustrates the dynamic. The agency held Click-to-Call's patent claims invalid, and Click-to-Call does not contest that holding. It resists only the agency's institution decision, mindful that if the institution decision is reversed, then the agency's work will be undone and the canceled patent claims resurrected.

Other features of the statutory design confirm that Congress prioritized patentability over §315(b)'s timeliness requirement. A petitioner's failure to satisfy §315(b) does not prevent the agency from conducting inter partes review of the challenged patent claims; the agency can do so at another petitioner's request. §311(a). Nor does failure to satisfy §315(b) prevent the original initiator from participating on the merits; the §315(b)-barred party can join a proceeding initiated by another petitioner. §315(b), (c). And once inter partes review is instituted, the agency may issue a final written decision even "[i]f no petitioner remains in the inter partes review." §317(a). It is unsurprising that a statutory scheme so consistently elevating resolution of patentability above a petitioner's compliance with §315(b) would exclude §315(b) appeals, thereby preserving the Board's adjudication of the merits.

honest count on first view, but a jaundiced one on second look? See *post*, at 19–20.

Opinion of the Court

Judicial review of §315(b) rulings, moreover, would do little to serve other statutory goals. The purpose of §315(b), all agree, is to minimize burdensome overlap between inter partes review and patent-infringement litigation. Brief for Petitioner 24; Brief for Federal Respondent 36; Brief for Respondent Click-to-Call 37. Judicial review *after* the agency proceedings cannot undo the burdens already occasioned. Nor are §315(b) appeals necessary to protect patent claims from wrongful invalidation, for patent owners remain free to appeal final decisions on the merits. §319.

## IV

Click-to-Call advances a narrower reading of §314(d). In Click-to-Call's view, which the dissent embraces, *post*, at 6–18, the bar on judicial review applies only to the agency's threshold determination under §314(a) of the question whether the petitioner has a reasonable likelihood of prevailing. Section 314(d) addresses the "determination by the Director whether to institute inter partes review *under this section*" (emphasis added), and, Click-to-Call maintains, §314(a) contains "the only substantive determination referenced in" the same section as §314(d). Brief for Respondent Click-to-Call 16. This interpretation, Click-to-Call argues, supplies a clear rule consonant with the presumption favoring judicial review. Cf. *supra*, at 4–5 (Federal Circuit's en banc *Wi-Fi One* decision).

*Cuozzo* is fatal to Click-to-Call's interpretation. Section 314(d)'s review bar is not confined to the agency's application of §314(a), for in *Cuozzo* we held unreviewable the agency's application of §312(a)(3). 579 U. S., at ___–___ (slip op., at 7–8). Far from limiting the appeal bar to §314(a) and "nothing else" as Click-to-Call urges, Brief for Respondent 29, the Court's opinion in *Cuozzo* explained that the bar extends to challenges grounded in "statutes related to" the institution decision. 579 U. S., at ___ (slip op., at 11).

Opinion of the Court

The text of §314(d) offers Click-to-Call no support. The provision sweeps more broadly than the determination about whether "there is a reasonable likelihood that the petitioner would prevail." §314(a). Rather, it encompasses the entire determination "whether to institute an inter partes review." §314(d).

And §314(d) refers not to a determination under subsection (a), but to the determination "under this section." That phrase indicates that §314 governs the Director's institution of inter partes review. Titled "Institution of inter partes review," §314 is the section housing the command to the Director to "determine whether to institute an inter partes review," §314(b). Thus, every decision to institute is made "under" §314 but must take account of specifications in other provisions—such as the §312(a)(3) particularity requirement at issue in *Cuozzo* and the §315(b) timeliness requirement at issue here. Similar clarifying language recurs throughout the AIA. See, *e.g.*, §315(c) (referring to the Director's determination regarding "the institution of an inter partes review *under section 314*" (emphasis added)); §314(b) (referring to "a petition filed *under section 311*," the section authorizing the filing of petitions (emphasis added)); §314(b)(1) (referring to "a preliminary response to the petition *under section 313*," the section authorizing the filing of preliminary responses to petitions (emphasis added)).

If Congress had intended Click-to-Call's meaning, it had at hand readymade language from a precursor to §314(d): "A determination by the Director under *subsection (a)* shall be final and non-appealable." 35 U. S. C. §312(c) (2006 ed.) (emphasis added) (governing inter partes reexamination). Or Congress might have borrowed from a related provision: "A determination by the Director pursuant to *subsection (a) of this section that no substantial new question of patentability has been raised* will be final and nonappealable." 35 U. S. C. §303(c) (emphasis added) (governing ex parte reex-

amination). Instead, Congress chose to shield from appellate review the determination "whether *to institute an inter partes review* under *this section*." §314(d) (emphasis added). That departure in language suggests a departure in meaning. See *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. ___, ___ (2017) (slip op., at 6).

Click-to-Call doubts that Congress would have limited the agency's institution authority in §315(b) without ensuring judicial supervision. Congress entrusted the institution decision to the agency, however, to avoid the significant costs, already recounted, of nullifying a thoroughgoing determination about a patent's validity. See *supra*, at 8–9. That goal—preventing appeals that would frustrate efficient resolution of patentability—extends beyond §314(a) appeals.

Click-to-Call also contends that we adopted its interpretation of §314(d) in *SAS Institute Inc.* v. *Iancu*, 584 U. S. ___ (2018). Neither of our holdings in that case assists Click-to-Call, and both holdings remain governing law. *SAS Institute* first held that once the agency institutes an inter partes review, it must "resolve *all* of the claims in the case." *Id.*, at ___ (slip op., at 1). *SAS Institute* located that rule in §318(a), which requires the agency to decide "the patentability of *any* patent claim challenged by the petitioner." *Ibid.* (emphasis in original; internal quotation marks omitted). *SAS Institute* next held that §314(d) did not bar judicial review of §318(a)'s application. *Id.*, at ___–___ (slip op., at 12–14). Our decision explained that "nothing in §314(d) or *Cuozzo* withdraws our power to ensure that an inter partes review proceeds in accordance with the law's demands." *Id.*, at ___ (slip op., at 14). That reviewability holding is inapplicable here, for Click-to-Call's appeal challenges not the manner in which the agency's review "proceeds" once instituted, but whether the agency should have instituted review at all.

Opinion of the Court

Click-to-Call homes in on a single sentence from *SAS Institute*'s reviewability discussion: "*Cuozzo* concluded that §314(d) precludes judicial review only of the Director's 'initial determination' under §314(a) that 'there is a "reasonable likelihood" that the claims are unpatentable on the grounds asserted' and review is therefore justified." *Id.*, at ___ (slip op., at 13) (quoting *Cuozzo*, 579 U. S., at ___ (slip op., at 9)). But that sentence's account of *Cuozzo* is incomplete. Recall that *Cuozzo* itself applied §314(d)'s appeal bar to a challenge on grounds other than §314(a). See *supra*, at 10. To understand how far beyond §314(a) the bar on judicial review extends, we look to the statute and *Cuozzo*; for the reasons stated above, they establish that §314(d) bars challenges resting on §315(b).[6]

_____

[6] Defending Click-to-Call's interpretation, the dissent takes a view of our precedent that neither Click-to-Call nor the Federal Circuit advances. See *post*, at 15–18. The dissent does not consider itself bound by *Cuozzo*'s conclusion that §314(d) bars appeal of "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review," 579 U. S., at ___ (slip op., at 11). According to the dissent, that statement is dicta later repudiated in *SAS Institute Inc.* v. *Iancu*, 584 U. S. ___ (2018).

But *Cuozzo* concerned an appeal resting on a "related statutory section": §312(a)(3). 579 U. S., at ___ (slip op., at 7). That §312(a)(3) challenge was tied to institution, the Court explained, for two reasons: first, because it "attack[ed] a 'determination . . . whether to institute' review," *id.*, at ___–___ (slip op., at 7–8); second, because the §312(a)(3) challenge was related to invoking §314(a)'s condition on institution, *id.*, at ___ (slip op., at 12). *Cuozzo*'s recognition that §314(d) can bar challenges rooted in provisions other than §314(a) was hardly "dicta," *post*, at 16—it was the Court's holding. And *SAS Institute* purported to adhere to *Cuozzo*, not to overrule it. 584 U. S., at ___–___ (slip op., at 13–14). The Court in *SAS Institute* said, specifically, that it discerned "nothing in . . . *Cuozzo*" inconsistent with its conclusion. *Id.*, at ___ (slip op., at 14).

We do not so lightly treat our determinations as dicta and our decisions as overruling others *sub silentio*. Nor can we countenance the dissent's dangerous insinuation that today's decision is not "really" binding precedent. *Post*, at 17–18 ("[W]ho can say?"); *post*, at 18 ("Litigants and lower

Opinion of the Court

## V

Click-to-Call presses an alternative reason why the Board's ruling on its §315(b) objection is appealable. The Board's final written decision addressed the §315(b) issue, so Click-to-Call argues that it may appeal under §319, which authorizes appeal from the final written decision. But even labeled as an appeal from the final written decision, Click-to-Call's attempt to overturn the Board's §315(b) ruling is still barred by §314(d). Because §315(b)'s sole office is to govern institution, Click-to-Call's contention remains, essentially, that the agency should have refused to institute inter partes review. As explained, §314(d) makes that contention unreviewable.

\*    \*    \*

For the reasons stated, we vacate the judgment of the United States Court of Appeals for the Federal Circuit and remand the case with instructions to dismiss for lack of appellate jurisdiction.

*It is so ordered.*

———————

courts alike will just have to wait and see."). Lest any "confusion" remain, *post*, at 17, we reaffirm today our holding in *Cuozzo*: Section 314(d) generally precludes appeals of the agency's institution decision, including, beyond genuine debate, appeals "consist[ing] of questions that are closely tied to the application and interpretation of statutes related to" the institution decision. 579 U. S., at ___, ___ (slip op., at 7, 11). The appeal bar, we therefore reiterate, is not limited to the agency's application of §314(a).

## APPENDIX OF KEY STATUTORY PROVISIONS

35 U. S. C. §314:
   "**Institution of inter partes review**

   "(a) THRESHOLD.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

   "(b) TIMING.—The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—

   "(1) receiving a preliminary response to the petition under section 313; or

   "(2) if no such preliminary response is filed, the last date on which such response may be filed.

   "(c) NOTICE.—The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.

   "(d) NO APPEAL.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."

35 U. S. C. §315(b):

"PATENT OWNER'S ACTION.—An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c)."

Cite as: 590 U. S. \_\_\_\_ (2020)       1

GORSUCH, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 18–916

————

## THRYV, INC., FKA DEX MEDIA, INC., PETITIONER *v.* CLICK-TO-CALL TECHNOLOGIES, LP, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 20, 2020]

JUSTICE GORSUCH, with whom JUSTICE SOTOMAYOR joins as to Parts I, II, III, and IV, dissenting.

Today the Court takes a flawed premise—that the Constitution permits a politically guided agency to revoke an inventor's property right in an issued patent—and bends it further, allowing the agency's decision to stand immune from judicial review. Worse, the Court closes the courthouse not in a case where the patent owner is merely unhappy with the merits of the agency's decision but where the owner claims the agency's proceedings were unlawful from the start. Most remarkably, the Court denies judicial review even though the government now concedes that the patent owner is *right* and this entire exercise in property-taking-by-bureaucracy was forbidden by law.

It might be one thing if Congress clearly ordained this strange result. But it did not. The relevant statute, the presumption of judicial review, and our precedent all point toward allowing, not forbidding, inventors their day in court. Yet, the Court brushes past these warning signs and, in the process, carries us another step down the road of ceding core judicial powers to agency officials and leaving the disposition of private rights and liberties to bureaucratic mercy.

GORSUCH, J., dissenting

## I

Our story stretches back to the 1990s, when Stephen Du-Val invented a system for anonymizing telephone calls. Believing in the promise of his idea, Mr. DuVal hired an attorney to secure a patent and sought avenues to bring his invention to market. Initially, both efforts met with success. In 1998, Mr. DuVal was awarded a U. S. Patent, which he licensed to a company called InfoRocket.com, Inc.

But problems soon emerged. In 2001, InfoRocket accused Ingenio, Inc., a predecessor of today's petitioner Thryv, Inc., of infringing Mr. DuVal's patent. The case carried on in federal district court for more than a year before InfoRocket and Ingenio decided to merge. The companies then jointly persuaded the court to dismiss InfoRocket's lawsuit without prejudice.

Still, the quiet did not last long. Following the merger, the surviving entity—for simplicity, call it Thryv—sought to turn the tables on Mr. DuVal by asking the Patent Office to reconsider the validity of his patent in an ex parte reexamination. That agency-led process dragged on for four more years, and ended with a mixed verdict: The Patent Office canceled a few claims, but amended others and permitted Mr. DuVal to add some new ones too.

Even the ex parte reexamination wasn't enough to put the parties' disputes to rest. During the reexamination, Thryv terminated its license with Mr. DuVal and stopped paying him royalties. But it seems that Thryv continued using the patented technology all the same. So Mr. Duval transferred his patent to respondent Click-to-Call Technologies LP (CTC), which swiftly took the patent back to court. CTC noted that Thryv couldn't exactly plead ignorance about this patent, given that the company or its predecessors had previously licensed the patent, been sued for infringing it, and asked the Patent Office to reexamine it. When it came to Mr. DuVal's patent, CTC alleged, Thryv

GORSUCH, J., dissenting

had done just about everything one can do to a patent except invent it.

Thryv responded by opening another new litigation front of its own. One year after CTC filed its federal lawsuit, Thryv lodged another administrative petition with the Patent Office, this time seeking inter partes review. Echoing some of the same arguments that led to its push for an ex parte administrative reexamination nine years earlier, and adding other arguments too, Thryv (again) asked the agency to cancel Mr. DuVal's patent on the grounds that it lacked novelty and was obvious. At the same time, Thryv sought to stay proceedings in CTC's infringement suit. Thryv argued that the district court should defer to the newly initiated inter partes review. Like many district courts facing the prospect of parallel administrative proceedings, this one obliged.

Why at this late hour did Thryv prefer to litigate before the agency rather than a federal district court? The agency's ex parte reexamination years earlier hadn't helped Thryv much. But since then, Congress had adopted the Leahy-Smith America Invents Act (AIA), 35 U. S. C. §100 *et seq.* That law created the inter partes review process, which provides a number of benefits to accused infringers such as Thryv. Like federal court litigation, inter partes review holds the advantage of allowing a private party attacking a patent's validity to participate in adversarial proceedings, rather than rely on the agency to direct its own investigation as it does in ex parte reexamination. Compare 35 U. S. C. §316 with §§302, 304, 305. Inter partes review also allows a party challenging a patent all manner of discovery, including depositions and the presentation of expert testimony. §316; 37 CFR §§42.51–42.65 (2019). At the same time, the burden of proof is lower—requiring challengers like Thryv to prove unpatentability only by a preponderance of the evidence, §316(e), rather than under the clear and convincing standard that usually applies in court.

GORSUCH, J., dissenting

*Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91 (2011). Perhaps most appealing, proceedings take place before the Patent Trial and Appeal Board, rather than in an Article III court, so there is no jury trial before a tenure-protected judge, only a hearing before a panel of agency employees.

Some say the new regime represents a particularly efficient new way to "kill" patents. Certainly, the numbers tell an inviting story for petitioners like Thryv. In approximately 80% of cases reaching a final decision, the Board cancels some or all of the challenged claims. Patent Trial and Appeal Board, Trial Statistics 10 (Feb. 2020), https://www.uspto.gov/sites/default/files/documents/Trial_Statistics_2020_02_29.pdf. The Board has been busy, too, instituting more than 800 of these new proceedings every year. See *id.,* at 6.

Still, Thryv faced a hurdle. Inter partes review "may not be instituted" based on an administrative petition filed more than a year after "the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent" in federal court. 35 U. S. C. §315(b). So, while Congress sought to move many cases out of court and into its new administrative process, it thought patent owners who have already endured long challenges in court shouldn't have to face another layer of administrative review. After all, *some* repose is due inventors. Patents typically last 20 years; what happens to the incentive to invent if litigation over them lasts even longer (as it has for Mr. DuVal)? By anyone's estimation, too, §315(b)'s time bar was sure to pose a special problem for Thryv. Yes, Thryv had petitioned for inter partes review one year after being served with CTC's complaint. But nearly *12 years* had passed since Thryv's predecessor and privy first found itself on the business end of a lawsuit alleging that it had infringed Mr. DuVal's patent.

Despite this apparently fatal defect, the Board plowed

GORSUCH, J., dissenting

ahead anyway. No one could dispute that Thryv's predecessor and privy had been "served with a complaint alleging infringement of the patent" more than a decade earlier. But that complaint didn't count, the Board declared, because it was dismissed without prejudice. The Board cited nothing in §315(b) suggesting this distinction makes a difference under the statute's plain terms. Instead, the Board tiptoed past the problem and proceeded to invalidate almost all of the patent claims before it, even those the Patent Office itself had affirmed in its own ex parte proceeding years before. No doubt this was exactly what Thryv hoped for in its second bite at the administrative apple.

Thryv's victory may have taken years to achieve, but it didn't seem calculated to last long. Predictably, CTC appealed the Board's interpretation of §315(b) to the Federal Circuit. And just as unsurprisingly, the court held that dismissed complaints *do* count as complaints, so Thryv's inter partes administrative challenge was time barred from the start. Mr. DuVal's patent had already survived one ex parte reexamination Thryv instigated. The patent had been the subject of long and repeated litigation in federal courts. The agency had no business opening yet another new inquiry into this very old patent.

But Thryv had one maneuver left. It sought review in this Court, insisting that Article III courts lack authority even to say what the law demands. According to Thryv, a different provision, §314(d), renders the agency's interpretations and applications of §315(b) immune from judicial review. So the Board can err; it can even act in defiance of plain congressional limits on its authority. But, in Thryv's view, a court can do nothing about it. Enforcement of §315(b)'s time bar falls only to the very Patent Office officials whose authority it seeks to restrain. Inventors like Mr. DuVal just have to hope that the bureaucracy revoking their property rights will take the extra trouble of doing so in accordance with law.

GORSUCH, J., dissenting

That's the strange place we now find ourselves. Thryv managed to persuade the Court to grant its petition for certiorari to consider its extraordinary argument. And today the Court vindicates its last and most remarkable maneuver.

## II

### A

How could §314(d) insulate from judicial review the agency's—admittedly mistaken—interpretation of an entirely different provision, §315(b)? The answer is that it doesn't.

To see why, look no further than §314(d). The statute tells us that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." So the *only* thing §314(d) insulates from judicial review is "[t]he determination" made "by the Director" "under this section"—that is, a determination discussed *within* §314. Nothing in the statute insulates agency interpretations of other provisions *outside* §314, including those involving §315(b).

This arrangement makes sense. Given that §314(d) speaks of "[t]he determination by the Director "under this section," it comes as no surprise that the section mentions just *one* such "determination." It is found in §314(a), where the Director "determines" whether the parties' initial pleadings suggest "a reasonable likelihood" the petitioner will prevail in defeating at least some aspect of the challenged patent. And it is easy to see why Congress might make a preliminary merits assessment like that exempt from further view: If the Director institutes a meritless petition, the Board can summarily affirm the patent's validity. See §318(a); 37 CFR §§42.71–42.73. In any event, the Board is obligated to render a final—and judicially reviewable—decision within a year. 35 U. S. C. §§141(c), 316(a)(11),

GORSUCH, J., dissenting

318(a), 319. So judicial review of the Director's initial appraisal of the merits isn't really *eliminated* as much as it is *channeled* toward the Board's final decision on those merits. That process finds a ready analogue elsewhere in our law. Much as here, an indicted criminal defendant unhappy with a grand jury's finding of probable cause isn't permitted to challenge that preliminary assessment, but may instead move the court for acquittal after the government has presented all its evidence. See *Costello* v. *United States*, 350 U. S. 359, 363 (1956); Fed. Rule Crim. Proc. 29(a).

Matters *outside* §314 are different. Take the provision before us, §315(b). It promises that an inter partes review "may not be instituted" more than a year after the initiation of litigation. This stands as an affirmative limit on the agency's authority. Much like a statute of limitations, this provision supplies an argument a party can continue to press throughout the life of the administrative proceeding and on appeal. Nothing in §315(b) speaks of a "determination by the Director," let alone suggests that the agency's initial ruling on a petition's timeliness is "final and nonappealable."

To pretend otherwise would invite a linguistic nonsense. We would have to read §314's language speaking of "[t]he" "determination" "under this section" to include not one determination but two—and to include not only the determination actually made under "this section" but also a second assessment made about the effect of an entirely different section.

To pretend otherwise would invite a practical nonsense as well. Because the Director's initial "reasonable likelihood" determination under §314(a) relates to the merits, it will be effectively reviewed both by the Board and courts as the case progresses. But when does the Director's application of §315(b)'s time bar get another look? Under Thryv's interpretation, a provision that reads like an affirmative

GORSUCH, J., dissenting

limit on the agency's authority reduces to a mere suggestion. No matter how wrong or even purposefully evasive, the Director's assessment of a petition's timeliness is always immune from review. And even that's not the end of it. In other cases, the Board has claimed *it* has the right to review these initial timeliness decisions, and Thryv seems content with those rulings. See, *e.g., Medtronic, Inc.* v. *Robert Bosch Healthcare Systems, Inc.*, 839 F. 3d 1382 (CA Fed. 2016). So it turns out the company doesn't really want to make an initial administrative timeliness decisions *final*; it just wants to make them *unreviewable in court*, defying once more §314's plain language and any rational explanation, except maybe as an expedient to win the day's case.

B

Confronting so many problems in the statute's text, Thryv seeks a way around them by offering a competing account of the law's operation. While §314 empowers the Director to make an institution decision, Thryv asserts that various provisions scattered throughout the chapter—such as §§314(a), 315(a)(1), and 315(b)—help guide the decision. And on Thryv's interpretation, *all* questions related to the Director's institution decision should be insulated from review, no matter where those rules are found. What about the fact §314 speaks of insulating only "[t]he" "determination" "under this section"? Thryv says this language serves merely to indicate *which* institution authority is unreviewable—namely, the Director's authority to institute an inter partes proceeding pursuant to §314, rather than pursuant to some other provision.

This interpretation, however, makes a nullity of the very language it purports to explain. Section 314 is the *only* section that authorizes the Director to institute inter partes review, making it pointless for Congress to tell us that we're talking about the Director's §314 inter partes review insti-

GORSUCH, J., dissenting

tution authority as opposed to *some other* inter partes review institution authority.  In fact, you can strike "under this section" from §314(d) and Thryv's interpretation remains unchanged.  That's a pretty good clue something has gone wrong.

Faced with this problem of surplusage, Thryv alludes to the possibility that Congress included redundant language to be "double sure."  But double sure of what?  Thryv does not identify any confusion that the phrase "under this section" might help avoid.  Given the lack of *any* other provision, *anywhere* in the U. S. Code, authorizing *anyone* to institute inter partes review, even the most obtuse reader would never have any use for the clarification supposedly provided by "under this section" on Thryv's account.

Maybe so, Thryv replies, but we shouldn't worry about the surplusage here because the AIA contains surplusage elsewhere.  The other putative examples of surplusage Thryv identifies, however, have no bearing on the provision now before us.  And even a passing glance reveals no surplusage in them either.  Consider §315(c).  It says that "the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition *under section 311* that the Director, after receiving a preliminary response *under section 313* . . . , determines warrants the institution of an inter partes review *under section 314*." (Emphasis added.)  Thryv argues that all these cross-references are unnecessary.  But look closely:  Each of §315(c)'s cross-references does important work to establish the rules for joinder.  Strike the first and the requirements of a joinder petition become undefined.  Strike the second and it's a mystery what kind of response the patent owner is entitled to file.  Strike the third and the Director's determination whether to grant joinder becomes standardless.  All of this language has a point to it—just as "under this section" does under a faithful interpretation of §314(d).

That leaves Thryv only one more tenuous textual lifeline

GORSUCH, J., dissenting

left to toss. If Congress had wanted to insulate from review only "[t]he" "determination" that a petition has a "reasonable likelihood" of success, the company suggests, Congress could have spoken of insulating "the determination under subsection (a)" rather than "the determination under this section." And Thryv reminds us that Congress used that latter formulation in nearby and predecessor statutes. See, *e.g.,* §303(c) ("[a] determination by the Director pursuant to subsection (a) of this section . . . will be final and nonappealable"); §312(c) (2006 ed.; repealed 2011) ("[a] determination by the Director under subsection (a) shall be final and non-appealable").

But so what? One could replace the phrase "my next-door neighbor to the west" with "my neighbor at 123 Main Street" (assuming that is her address) and the meaning would be the same. Likewise, it hardly matters whether Congress spoke of the "determination" "under this section" or "under subsection (a)." Either way, our attention is directed within, not beyond, §314. And what's Thryv's alternative? It would have us read language speaking of the Director's determination "under this section" to encompass any decision related to the initiation of inter partes review found anywhere in the AIA—an entire chapter of the U. S. Code. That's sort of like reading "my next-door neighbor to the west" to include "anyone in town." Nor do things get better for Thryv with a careful assessment of nearby and predecessor statutes. They reveal that Congress knew exactly how to give broader directions like the one Thryv imagines when it wished to do so. See, *e.g.,* §314(b) (directing our attention to the Director's decision whether to institute inter partes review "under this chapter" rather than "under this section").

Without any plausible textual or contextual hook for its position, Thryv finishes by advancing a parade of policy horribles. It notes that the AIA imposes lots of *other* constraints on inter partes review besides the §315(b) timing

provision now before us. For example, the law bars petitioners who have filed declaratory judgment actions from challenging the same patent in inter partes review proceedings, §315(a)(1), and it estops petitioners from seeking other forms of review once an inter partes proceeding finishes, §315(e). If courts are going to review the agency's application of §315(b), Thryv wonders, are they going to have to review the agency's application of these other provisions too?

But we could just as easily march this parade in the opposite direction. Even assuming (without deciding) that Thryv is right and the reviewability of all these provisions stands or falls together, that seems at least as good an argument for as against judicial review. If so much more is at stake, if many more kinds of agency errors could be insulated from correction, isn't that a greater reason to pay assiduous attention to the statute's terms? Surely, Thryv's professed concern for judicial economy supplies no license to ignore our duty to decide the cases properly put to us in accord with the statute's terms.

### III

This last point leads to another reason why we should reject Thryv's reading of the statute. Even if the company could muster some doubt about the reach of §314(d), it wouldn't be enough to overcome the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 496 (1991). As this Court has long explained, "we will . . . find an intent to preclude such review only if presented with clear and convincing evidence." *Reno* v. *Catholic Social Services, Inc.*, 509 U. S. 43, 64 (1993) (internal quotation marks omitted).

The presumption of judicial review is deeply rooted in our history and separation of powers. To guard against arbitrary government, our founders knew, elections are not

enough: "An elective despotism was not the government we fought for." The Federalist No. 48, p. 311 (C. Rossiter ed. 1961) (emphasis deleted). In a government "founded on free principles," no one person, group, or branch may hold all the keys of power over a private person's liberty or property. *Ibid.* Instead, power must be set against power, "divided and balanced among several bodies . . . checked and re- strained by the others." *Ibid.* As Chief Justice Marshall put it: "It would excite some surprise if, in a government of laws and of principle . . . a department whose appropriate duty it is to decide questions of right, not only between in- dividuals, but between the government and individuals," a statute might leave that individual "with no remedy, no ap- peal to the laws of his country, if he should believe the claim to be unjust." *United States* v. *Nourse*, 9 Pet. 8, 28–29 (1835).

It should come as an equal surprise to think Congress might have imposed an express limit on an executive bu- reaucracy's authority to decide the rights of individuals, and then entrusted that agency with the sole power to en- force the limits of its own authority. Yet on Thryv's account, §315(b)'s command that "inter partes review *may not* be in- stituted" would be left entrusted to the good faith of the very executive officials it is meant to constrain. (Emphasis added.) We do not normally rush to a conclusion that Con- gress has issued such "'blank checks drawn to the credit of some administrative officer.'" *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 671 (1986) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

That usually may be the case, Thryv counters, but this statute's unusually modest purpose makes it plausible to think Congress meant to shield its application from judicial review. After all, the company submits, §315(b) is not really a firm limit on the agency's authority, only a claim pro- cessing rule. For proof, the company reminds us that

GORSUCH, J., dissenting

§315(b) bars challengers who have already spent a year lit-
igating in court from petitioning the agency, but leaves
open the possibility that the agency might still institute in-
ter partes review if a different, eligible petitioner happens
to come along. And this theoretical possibility, Thryv tells
us, suggests that the agency was meant to be allowed to act
as it wants.

But Thryv's reply here is like saying Article III's "case or
controversy" requirement isn't really a limit on the power
of federal courts, because it's always possible that *some* lit-
igant with a live dispute will come forward and require the
court to settle a particular legal question. The implacable
fact is that nothing in the AIA gives the Director or the
Board freewheeling authority to conduct inter partes re-
view. The statute demands the participation of a real party
in interest, a petitioner who is not barred by prior litigation
and who is willing to face estoppel should he lose. §§311(a),
315. And if, as seems likely in our case and many others,
no one is willing and able to meet those conditions, the law
does not permit inter partes review. So rather than a claim
processing rule, §315 is both a constraint on the agency's
power and a valuable guarantee that a patent owner must
battle the same foe only once.

Realizing that its textual arguments are too strained to
demonstrate clearly and convincingly that Congress meant
to displace judicial review, Thryv asks us to draw "infer-
ences" from the AIA "as a whole." Brief for Petitioner 16
(internal quotation marks omitted). In particular, the com-
pany tells us that Congress's "overriding purpose" in creat-
ing inter partes review was to "weed out poor quality pat-
ents," and that judicial enforcement of §315(b) would slow
this progress. *Id.,* at 24 (quotation altered). But to support
its thematic account of the law's goals, Thryv rests on one
thin reed after another—a House Report here, a floor state-
ment there, and a few quotations from *Cuozzo Speed Tech-
nologies, LLC* v. *Lee,* 579 U. S. ___ (2016), that summarize

these same sources.  All the rest is generously filled in by
the company's own account about how inter partes review
*ought* to work.

That's far from enough.  The historic presumption of ju-
dicial review has never before folded before a couple stray
pieces of legislative history and naked policy appeals.  Be-
sides, Thryv's submissions cannot withstand the mildest in-
spection even on their own terms.  No one doubts that Con-
gress authorized inter partes review to encourage further
scrutiny of already issued patents.  But lost in Thryv's tell-
ing about the purposes of the AIA is plenty of evidence that
Congress *also* included provisions to preserve the value of
patents and protect the rights of patent owners.  For exam-
ple, Congress sharply limited the legal grounds that might
be pursued in inter partes review, §311(b); afforded patent
owners an opportunity to respond to petitions prior to insti-
tution, §313; and, most relevant today, protected patent
owners from the need to fight a two-front war before both
the Board and federal district court, §315.  Legislating in-
volves compromise and it would be naive to think that, as
the price for their zealous new procedures for canceling pat-
ents, those who proposed the AIA didn't have to accept
*some* protections like these for patent holders.  Yet, Thryv
glides past all these provisions without comment.  Worse,
taking the company's argument to its logical conclusion
could render these protections into "'merely advisory'" fea-
tures of the law.  *Bowen*, 476 U. S., at 671.  If adopted,
Thryv's vision of an administrative regime singularly fo-
cused on the efficient canceling of patents could become
self-fulfilling.

A case decided just weeks ago supplies a telling point of
comparison.  In *Guerrero-Lasprilla* v. *Barr*, 589 U. S. ___
(2020), Congress sought to expedite the removal of aliens
convicted of certain aggravated felonies by foreclosing judi-
cial review of their cases unless they raised "questions of
law."  See 8 U. S. C. §§1252(a)(2)(C), (D).  But the statute

there was ambiguous about mixed questions of law and fact: Were these (reviewable) questions of law, or (unreviewable) determinations of fact? Because the statute could be interpreted either way, this Court held, the presumption of reviewability preserved the aliens' ability to argue mixed questions on appeal. Today, the textual arguments for shielding the agency's decision from review are even weaker, and the same presumption that preserved judicial review for felons seeking discretionary relief from removal should do no less work for patent holders seeking to defend their inventions.

## IV

Even if the statute's plain language and the presumption in favor of review dictate a ruling against it, Thryv finishes by suggesting we must ignore all that and rule for it anyway because precedent commands it. Maybe our precedent is wrong, the company says, but it binds us all the same.

In particular, Thryv points us to *Cuozzo*. There, the Court suggested that §314(d) could preclude review in cases: (1) where a litigant challenges the Director's reasonable likelihood of success determination under §314(a), or (2) where a litigant "grounds its claim in a statute closely related to that decision to institute inter partes review." 579 U. S., at ___ (slip op., at 12). That first path is faithful to the plain language of §314(d). The second appears nowhere in the statute but is, instead, a product of the judicial imagination. Still, Thryv says, we must follow that path wherever it leads and, because §315(b) decisions are "closely related" to §314(a) decisions, we shouldn't review them.

But *Cuozzo* hardly held so much. In fact, *Cuozzo* had no need to explore the second path it imagined, for it quickly concluded that the argument before it was "little more than a challenge to the Patent Office's conclusion under §314(a),"

GORSUCH, J., dissenting

a decision shielded from judicial review under any interpretation of §314(d).  *Id.*, at ___ (slip op., at 12).  So all the discussion about the reviewability of decisions outside §314(a) turned out to be nothing more than dicta entirely unnecessary to the decision.  Nor did anything in *Cuozzo* directly address §315(b) decisions, let alone declare them to be "close enough" to §314(a) decisions to preclude judicial review.

That's just the beginning of Thryv's precedent problems, too.  In *SAS Institute Inc.* v. *Iancu*, 584 U. S. ___ (2018), an inter partes review petitioner challenged the Director's practice of instituting review of some, but not all, of the claims challenged in a single petition.  The government argued there—much as Thryv argues today—that §314(d) shielded this unlawful practice from judicial review.  In advancing this argument, the government seized on the same language in *Cuozzo* that Thryv now embraces, claiming that its opponent's "grounds for attacking the decision . . . are closely tied" to the §314(a) institution decision.  Brief for Federal Respondent in *SAS Institute Inc.* v. *Iancu*, O. T. 2017, No. 16–969, p. 13.  Because no one could say that the petitioner's argument in *SAS Institute* was "little more than a challenge to the Patent Office's conclusion under §314(a)," 584 U. S., at ___ (slip op., at 13), we were forced to confront whether *Cuozzo* and the relevant statutes actually barred not just institution decisions under §314(a) but things "closely related" to them.

We held they did not.  We began, as we did in *Cuozzo*, by noting the "strong presumption in favor of judicial review." *SAS Institute*, 584 U. S., at ___ (slip op., at 13) (internal quotation marks omitted).  We then put an end to any doubt about what the dicta in that case might mean:  "Given the strength of this presumption and the statute's text, *Cuozzo* concluded that §314(d) precludes judicial review *only* of the Director's 'initial determination' under §314(a)."  *Ibid.* (quoting *Cuozzo*, 579 U. S., at ___ (slip op., at 9); emphasis

GORSUCH, J., dissenting

added). We did not need to overrule *Cuozzo*, because the language the government seized upon from that opinion was dicta from the start. Still, we made it clear that dicta's day had come: To read *Cuozzo* as "foreclosing judicial review of any legal question bearing on the institution decision," we explained, would "overrea[d] both the statute and our precedent." *SAS Institute,* 584 U. S., at ___–___ (slip op., at 12–13). The petitioner's challenge to the Director's partial institution practice could go forward exactly because it was something other than a disagreement about the Director's initial determination under §314(a). *Id.*, at ___–___ (slip op., at 13–14).

It's not surprising that litigants would invite us to overread dicta or overlook an unfavorable precedent. What is surprising is that the Court would accept the invitation. In "cases involving property," after all, "considerations favoring *stare decisis* are at their acme." *Kimble* v. *Marvel Entertainment, LLC*, 576 U. S. 446, 457 (2015) (internal quotation marks omitted). And we are often reminded that "*stare decisis* carries enhanced force when a decision . . . interprets a statute." *Id.*, at 456. But rather than searching for the kind of "superspecial justification," *id.*, at 458, this Court supposedly requires to overrule a precedent like *SAS Institute*, today's majority quibbles with a few sentences and quietly walks away. If, as some have worried, "[e]ach time the Court overrules a case, the Court . . . cause[s] the public to become increasingly uncertain about which cases the Court will overrule," *Franchise Tax Bd. of Cal.* v. *Hyatt*, 587 U. S. ___, ___ (2019) (slip op., at 13), (BREYER, J., dissenting), one can only imagine what a judicial shrug of the shoulders like this might yield.

Litigants and lower courts will also have to be forgiven for the confusion to come about the meaning of §314(d)'s review bar. Whether it is limited to the §314(a) determination (as *SAS Institute* held and parts of *Cuozzo* suggested) or also reaches to challenges grounded in "closely related"

GORSUCH, J., dissenting

statutes (as other parts of *Cuozzo* suggested and the Court insists today)—who can say? And even supposing that "closely related to institution" really is the test we'll apply next time, does anyone know what this judicially concocted formulation even means? Despite three opinions interpreting the same provision in under five years, only one thing is clear: Neither the statute nor our precedent can be counted upon to give the answer. Litigants and lower courts alike will just have to wait and see.

V

It's a rough day when a decision manages to defy the plain language of a statute, our interpretative presumptions, *and* our precedent. But today that's not the worst of it. The Court's expansive reading of §314(d) takes us further down the road of handing over judicial powers involving the disposition of individual rights to executive agency officials.

We started the wrong turn in *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC*, 584 U. S. ___ (2018). There, a majority of this Court acquiesced to the AIA's provisions allowing agency officials to withdraw already-issued patents subject to very limited judicial review. As the majority saw it, patents are merely another public franchise that can be withdrawn more or less by executive grace. So what if patents were, for centuries, regarded as a form of personal property that, like any other, could be taken only by a judgment of a court of law. So what if our separation of powers and history frown on unfettered executive power over individuals, their liberty, and their property. What the government gives, the government may take away—with or without the involvement of the independent Judiciary. Today, a majority compounds that error by abandoning a good part of what little judicial review even the AIA left behind.

Just try to imagine this Court treating other individual

GORSUCH, J., dissenting

liberties or forms of private property this way.  Major portions of this country were settled by homesteaders who moved west on the promise of land patents from the federal government.  Much like an inventor seeking a patent for his invention, settlers seeking these governmental grants had to satisfy a number of conditions.  But once a patent issued, the granted lands became the recipient's private property, a vested right that could be withdrawn only in a court of law.  No one thinks we would allow a bureaucracy in Washington to "cancel" a citizen's right to his farm, and do so despite the government's admission that it acted in violation of the very statute that gave it this supposed authority.  For most of this Nation's history it was thought an invention patent holder "holds a property in his invention by as good a title as the farmer holds his farm and flock."  *Hovey* v. *Henry*, 12 F. Cas. 603, 604 (No. 6,742) (CC Mass. 1846) (Woodbury, J., for the court).  Yet now inventors hold nothing for long without executive grace.  An issued patent becomes nothing more than a transfer slip from one agency window to another.

Some seek to dismiss this concern by noting that the bureaucracy the AIA empowers to revoke patents is the same one that grants them.  But what comfort is that when the Constitution promises an independent judge in any case involving the deprivation of life, liberty, or property?  Would it make things any better if we assigned the Department of the Interior the task of canceling land patents because that agency initially allocated many of them?  The relevant constitutional fact is not which agency granted a property right, but that a property right was granted.

The abdication of our judicial duty comes with a price.  The Director of the Patent and Trademark Office is a political appointee.  The AIA vests him with unreviewable authority to institute (or not) inter partes review.  Nothing would prevent him, it seems, from insulating his favorite firms and industries from this process entirely.  Those who

GORSUCH, J., dissenting

are not so fortunate proceed to an administrative "trial" before a panel of agency employees that the Director also has the means to control. The AIA gives the Director the power to select which employees, and how many of them, will hear any particular inter partes challenge. It also gives him the power to decide how much they are paid. And if a panel reaches a result he doesn't like, the Director claims he may order rehearing before a new panel, of any size, and including even himself.

No one can doubt that this regime favors those with political clout, the powerful and the popular. But what about those who lack the resources or means to influence and maybe even capture a politically guided agency? Consider Mr. DuVal, who 25 years ago, came up with something the Patent Office agreed was novel and useful. His patent survived not only that initial review but a subsequent administrative ex parte review, a lawsuit, and the initiation of another. Yet, now, after the patent has expired, it is challenged in still another administrative proceeding and retroactively expunged by an agency that has, by its own admission, acted unlawfully. *That* is what happens when power is not balanced against power and executive action goes unchecked by judicial review. Rather than securing incentives to invent, the regime creates incentives to curry favor with officials in Washington.

Nor is it hard to imagine what might lie around the corner. Despite repeated lawsuits, no court ever ruled definitively on Mr. DuVal's patents. But suppose one had—and suppose he had prevailed. According to the agency, even that judgment might not matter much. In other cases, the Board has claimed the power through inter partes review to overrule final judicial judgments affirming patent rights. In the Director's estimation, it appears, even this Court's decisions must bow to the Board's will. See *XY, LLC* v. *Trans Ova Genetics, L. C.*, 890 F. 3d 1282, 1285–1286, 1294–1295 (CA Fed. 2018); *Fresenius USA, Inc.* v. *Baxter*

GORSUCH, J., dissenting

*Int'l, Inc.*, 721 F. 3d 1330, 1340–1344 (CA Fed. 2013). It's no wonder, then, that district courts sometimes throw up their hands and let the Board take over whenever inter partes review and patent litigation begin to overlap. Why bother with a trial if "the finality of any judgment rendered by [a] Court will be dubious"? Order Granting Stay in *Click-to-call Technologies LP* v. *Ingenio, Inc.*, No. 12–cv–00465 (WD Tex.), Doc. No. 147, p. 4.

It's understandable, too, why the agency might think so much is up for grabs. Not only did this Court give away much of its Article III authority in *Oil States* on a mistaken assessment that patents were historically treated as public franchises rather than private rights. Some would have had the Court go even further. Rather than looking to history to determine how patents were treated, as both the majority and dissent sought to do, these Members of the Court suggested that agencies should be allowed to withdraw even private rights if "a number of factors"—taken together, of course—suggest it's a good idea. *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 851 (1986); see also *Oil States*, 584 U. S., at ___ (BREYER, J., concurring) (slip op., at 1). These "factors" turn out to include such definitive and easily balanced considerations as the "nature of the claim," the "nature of the non-Article III tribunal," and the "nature and importance of the legislative purpose served by the grant of adjudicatory authority to a tribunal with judges who lack Article III's tenure and compensation protections." *Stern* v. *Marshall*, 564 U. S. 462, 513 (2011) (BREYER, J., dissenting). In other words, Article III promises that a person's private rights may be taken only in proceedings before an independent judge, *unless* the government's goals would be better served by a judge who isn't so independent.

Thryv seeks to assure us that affected parties can still file writs of mandamus in courts if the Patent Office gets *really*

GORSUCH, J., dissenting

out of hand. But the Court today will not say whether mandamus is available where the §314(d) bar applies, and the Federal Circuit has cast doubt on that possibility. *In re Power Integrations, Inc.*, 899 F. 3d 1316, 1319 (2018) ("We have held that the statutory prohibition on appeals from decisions not to institute inter partes review cannot be sidestepped simply by styling the request for review as a petition for mandamus"); *In re Procter & Gamble Co.*, 749 F. 3d 1376 (2014); *In re Dominion Dealer Solutions, LLC.*, 749 F. 3d 1379 (2014). Even assuming mandamus *is* available, it is a "drastic [remedy], to be invoked only in extraordinary situations." *Kerr* v. *United States Dist. Court for Northern Dist. of Cal.*, 426 U. S. 394, 402 (1976). To be eligible for this discretionary relief, a petitioner must first show a "clear and indisputable" right. *Id.*, at 403 (internal quotation marks omitted). But how often could a litigant show such a "clear and indisputable" right in an area where courts shirk their duty to say what the law is in the first place? And how would a court find the will to call a situation "extraordinary" once the agency has been free for so long to ignore the limits on its power? If the case before us doesn't qualify as "extraordinary," and if the Board's admitted flouting of §315(b) isn't "clear and indisputable," then what extralegal act wouldn't be just another day at the office?

\*

Two years ago, this Court sanctioned a departure from the constitutional plan, one in which the Executive Branch assumed responsibilities long reserved to the Judiciary. In so doing, we denied inventors the right to have their claims tried before independent judges and juries. Today we compound that error, not only requiring patent owners to try their disputes before employees of a political branch, but limiting their ability to obtain judicial review when those

GORSUCH, J., dissenting

same employees fail or refuse to comply with the law.  Nothing in the statue commands this result, and nothing in the Constitution permits it.  Respectfully, I dissent.

CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by COOLEY LLP, Counsel for Appellant to print this document.  I am an employee of Counsel Press.

On **April 21, 2020**, Counsel for Appellant has authorized me to electronically file the foregoing **28(j) Letter** with the Clerk of Court using the CM/ECF System, which will send notice to all registered CM/ECF users including all counsel for *Amici Curiae* and the following counsel for Cross-Appellant:

> Vincent J. Rubino, III
> vrubino@brownrudnick.com
> Alfred R. Fabricant
> afabricant@brownrudnick.com
> Peter Lambrianakos
> plambrianakos@brownrudnick.com
> Enrique W. Iturralde
> eiturralde@brownrudnick.com
> BROWN RUDNICK LLP
> Seven Times Square
> New York, NY 10036

April 21, 2010                                    /s/ Robyn Cocho
                                                 Robyn Cocho